[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Barbara Gladue, commenced this action returnable February 16, 1993, against the defendant husband, Philip J. Gladue, Jr., seeking a dissolution of the parties' marriage on the ground of its irretrievable breakdown, custody and support of their minor child, alimony, a property distribution and other relief. The husband filed an answer denying the irretrievable breakdown, and a cross complaint seeking a dissolution of the marriage on the ground of adultery. He also sought custody and support of their minor child, an assignment to him of the wife's interest in the family home, and ocher relief.
The parties were represented by counsel throughout these proceedings and at the trial. Both parties testified, introduced documentary evidence and submitted financial affidavits and written proposed claims for relief. The husband also called several witnesses, including his former treating psychiatrist, and his mother.
From the evidence, the court makes the following findings.
The wife, whose maiden name was Barbara Jackson, married the husband in Fort Wayne, Indiana, on December 4, 1976. The wife has resided continuously in the State of Connecticut for at least one year before the filing of the complaint. All statutory stays have expired and the court has jurisdiction.
The parties have one minor child, Chad Philip Gladue, born December 10, 1981, who is issue of the marriage. No other minor children have been born to the wife since the date of the parties' marriage. Neither party or the child receives public assistance.
At the outset of the trial, the parties agreed upon joint CT Page 3341 legal custody of their son, Chad, and that his primary residence shall be with the wife. They also agreed that the husband would have reasonable rights of visitation. As the parties have agreed on the record upon joint legal custody, the statutory presumption arises that joint legal custody is in the best interests of the child and the court so finds. See General Statutes 46b-56a(b).
The wife is 40 years of age and in good health. She is a high school graduate with some college courses. She worked throughout the marriage in secretarial and clerical type jobs, and her earnings never were greater than $7 per hour. She now works as a full-time sales clerk and manager of a video store owned by her boyfriend, and earns $250 per week gross, $201 per week net. Her present job provides her with no health or life insurance or other benefits. Aside from her clerical, secretarial and retail sales skills, she has no specialized vocational skills.
The husband is 47 years old and has a G.E.D. high school diploma. His physical health is good, but he suffers from mental problems including post-traumatic stress, which originated from his military service in Vietnam. He received treatment from Dr. O'Brien, his psychiatrist, for over seven years beginning in 1983, and his therapy included lithium medication. Dr. O'Brien's treatment was terminated for financial reasons, and the husband continued treatment under the auspices of the Veterans' Administration (VA). He was granted a veteran's disability pension and currently receives payments of $87.70 per week net.
The husband was employed full time for about seven years by Monsanto Chemical Company until Monsanto closed its local plant in 1990, which resulted in the loss of his job. Since then, he has worked odd jobs, such as mowing, hedge cutting, and the like, until he obtained his `temporary' post office job as a letter carrier, which he currently holds. He hopes and expects to obtain permanent employment with the post office, which would include health insurance and other benefits. He now works on an "as needed" basis, with irregular hours and some overtime. He averages $415 per week gross, and $303 net, which, when added to his VA income, gives him total net income of $390 per week. His mental condition does not appear to impair his physical abilities or his job performance.
This marriage of seventeen years' duration never appeared to be truly happy, although the husband's mother, the elder Mrs. Gladue, testified that the wife was a "perfect daughter-in-law" CT Page 3342 and "terrific wife and mother".
The husband strenuously urged that the wife's sexual relationship with her boyfriend, which began in August, 1992, was the chief cause of the breakdown of the parties' marriage. Although the court understands how such behavior greatly affected and injured the husband who was vulnerable and suffering from his own inner torments, the court cannot agree. However happy the marriage may have appeared on the outside to the elder Mrs. Gladue, Mrs. Maynard, and to the husband himself, it is evident to the court that the marriage had severe problems for a long time. The husband's suffering from his mental illness manifested itself in temper tantrums and outbursts with verbal abuse to both his wife and child. His actions caused great stress, fear and tension in the household. In the words of Dr. O'Brien, `his problems negatively affected his family' and `his family was suffering'. At one point, well before the wife began her affair, the husband had moved out of the bedroom and slept on the couch for about one year. During this time, the parties had no intimate relations or relationship. The wife earlier had suggested marital counseling which the husband refused. And although the husband was in therapy for a long period of time, he was unable to fully and continuously control his negative behavior, while he fully understood its effects upon his wife and child. From this evidence, the court concludes that the wife's affair merely sounded the death knell for a marriage that had been destroyed for some period of time and continued a marriage in name only. At the same time, the court also concludes that the husband's behavior was involuntary and largely the result of his mental condition, and therefore, it would serve no useful purpose to, nor can the court, apportion a larger share of the responsibility for the breakdown of the marriage to either party. Despite the husband's professed willingness to resume the marriage, the court finds that the marriage has irretrievably broken down.
Throughout the marriage, the parties struggled financially and never accumulated any savings, even though the wife often worked outside of the home.
At some times, both parties were unemployed, and at others, the wife's income was all they had to live on. Thus, their financial affidavits and the evidence indicate that the parties have only a single asset of substantial value, which is their jointly-owned home and marital dwelling known as 420 Providence-New London Turnpike (Route 184), Stonington, Connecticut. CT Page 3343 The home was purchased by the parties for $105000 in 1982 when they moved from Indiana to Connecticut, and consists of a dwelling and a 1.847 acre parcel of land. The husband values it at $150000, the wife at $170000. No appraisal was furnished. Aside from their home, they show assets of minimal value, i.e., their cars, small bank accounts, etc. The husband shows $72895[1] in liabilities, some of which are joint with the wife, while she shows $7500 in liabilities, including bills joint with the husband, plus indebtedness for her attorneys' fees in the amount of $12060.
The husband owned a home in Indiana before the parties' marriage, which then became jointly owned. The parties sold it in 1982 for the sum of $43000 which was received in part by a $4000 down payment and a "land installment contract" for $39000 with monthly payments of $376.36. See Defendant's Exhibit 4. The Indiana land installment contract for all practical purposes is akin to a purchase money note and mortgage. In any event, after the payment of costs of sale, the parties' mortgage on the Indiana premises, moving expenses to Connecticut, and living expenses, none of the proceeds from the Indiana property was used for the acquisition of the Stonington home.
The Stonington home was purchased with the $60000 obtained from the parents and a first mortgage of $45000.[2] The court finds the present market value of the house and land to be $160000 and also finds that the husband worked full time during the marriage (except for his long period of unemployment) and earned more money than the wife; the earnings of both went into the home and were used for family purposes. She also was the primary caretaker of the child, and principal homemaker, and did the lion's share of the cooking, shopping, cleaning and laundry. The court finds that although the husband's economic contributions to the marriage and to the family home were greater than that of the wife, the difference was balanced by her non-monetary contributions which were much greater than his.
The court also finds that the husband has greater present earnings and vocational skills and a greater earning capacity than that of the wife. In addition, he has the safety net of his VA pension, of which he is trying to obtain an increase, and he has been the frequent beneficiary of gifts and loans from his mother in amounts before and during this litigation of at least $12500.[3] It is doubtful whether repayment by him of all or any part of this sum will ever be made or demanded. CT Page 3344
In sum, it is evident that the husband has a greater opportunity than the wife has to acquire capital assets and income in the future considering her skills, earning capacity and continuing need to be the principal caretaker of the parties' minor child.
The court also specifically notes that as part of a pendente lite order entered August 30, 1993, by stipulation, the husband paid the wife $2500, in part consideration of her vacating the family dwelling with the child, and granting him exclusive use and possession thereof. Additionally, the parties also agreed that the $2500 would be "a credit toward any property settlement claims of the [wife]", and further agreed to resolve any personal property disputes by arbitration. While the wife duly vacated the premises, and the husband duly paid her the $2500, disputes arose with respect to the personal property, which were never arbitrated. Instead, a flurry of contentious letters and communications were exchanged by counsel on behalf of the parties, which caused the parties additional needless expense, and achieved no progress in the resolution of this litigation.
The husband submitted a list of personal property he alleges was removed by the wife, and the wife disclaimed knowledge of certain of the items, but agreed to split the Christmas decorations, give him the hand mixer and hurricane lamp, and rejected his requests for the microwave and gray file cabinet.
The court also finds an arrearage for past due alimony and child support of $285 as of November 23, 1993 due to the wife by the husband.
In the light of the foregoing evidence and findings and after considering each of the criteria in General Statutes 46b-62,46b-81, 46b-82 and 46b-84,[4] the court orders as follows:
A decree dissolving the marriage may enter on the ground of irretrievable breakdown. Joint legal custody of the minor child, Chad, is awarded to the parties, primary physical custody and residence to be with the mother, subject to reasonable rights of visitation to the father.
In the light of the father's violent and threatening actions during the litigation which occurred in the child's presence and which directly embroiled the child in the parents' dispute, and CT Page 3345 the level of the animosity created, the court orders mediation by the Family Relations Office of any issues relating to the extent and nature of visitation and retains jurisdiction thereof. The court also orders the parents to participate in a parenting education program pursuant to Public Acts 1993, No. 93-319
forthwith.
The father shall pay to the mother the sum of $115 per week child support, which is within the child support guidelines, and which shall be secured by an immediate wage execution. He shall also have the dependency exemption for said child for federal and state income tax purposes for 1993 and subsequent years if he is current with said support as of the end of each calendar year. He shall also pay for and maintain his job-related health and medical insurance coverage for the child and the parties shall equally share any unreimbursed or uncovered medical or health-related bills for said child. An order pursuant to General Statutes 46b-84 (c) shall enter. The husband shall remit his fifty (50%) percent share of such bills within sixty days of wife furnishing to him copies of the bills and an explanation of benefits.
If the husband has life insurance available through his place of employment at a cost to him of not more than $20 per month, he shall irrevocably designate the wife and child as equal beneficiaries thereon and maintain said policy without impairment thereof until the child's majority and all of the obligations he is ordered to fulfill by this decree have been fully satisfied.
The husband shall pay to the wife the arrearage found in the amount of $285 within thirty days. In the event there are any other arrearages for child support and alimony due the wife from the husband arising between the date this trial concluded and the date of this judgment, they may be dealt with on a later day, and the court retains jurisdiction thereof.
He shall also indemnify and save her harmless from his parents' claim in Docket No. 104473.
The wife shall quitclaim all of her right, title and interest to the family home known as No. 420 Providence-New London Turnpike, (Route 184), Stonington, Connecticut, to the husband, subject to the first and second mortgages to Liberty Bank, which he shall pay and indemnify and save harmless the wife thereon. Simultaneously, he shall execute and deliver to the wife a note CT Page 3346 secured by a third mortgage in the amount of $27500 payable with four (4%) percent interest per annum in equal monthly payments of $131.29 per month, beginning April 1, 1994. Said note and mortgage shall contain a thirty-day default clause, provisions for attorney's fees and an increase in the interest rate to six (6%) percent per annum on the unpaid balance in the event of default, and provide that default in the payment of real estate taxes, homeowners' insurance premiums or any prior mortgage shall be a default of wife's note and mortgage and accelerate the maturity thereof. Wife shall be named as a loss payee on said homeowners insurance policy.
The unpaid principal balance and accrued interest due on said note, if any, shall be due and payable on the first to occur of any one of the following: husband's death or remarriage or sale of the premises or his ceasing to reside there as his principal residence, or March 1, 1998.
The husband shall pay to the wife as periodic alimony the sum of $10 per week until December 10, 1999. Said sum shall be tax deductible by the husband and taxable income to the wife, shall terminate upon the death of either party and reduce to $1 per year upon the wife's remarriage or cohabitation, and shall otherwise not be modifiable as to term or amount but may be modifiable by wife if husband fails to pay her mortgage note in full or fails to fully indemnify and save her harmless from his parents' claim against the wife, or the bank mortgage notes.
Each party shall have and own the automobiles and other personal property in his or her possession with the exception of the hand mixer and hand sprayer and one-half of the Christmas decorations, which the wife shall turn over to husband within thirty days hereof.
The parties shall cooperate and execute and deliver all documents necessary or incidental to the effectuation of the orders herein, which shall be done within thirty (30) days hereof.
The husband shall pay all of the debts shown on his financial affidavit and one-half of Dr. Steinberg's bill and indemnify and save harmless the wife therefrom. The wife shall pay the other half of Dr. Steinberg's bill and the Filene's and IRS liabilities shown on her financial affidavit and save the husband harmless therefrom. CT Page 3347
The husband shall pay toward the wife's counsel fees the sum of $1250 as the court finds that a total denial of wife's claim for counsel fees would undermine or impair the other financial orders entered; said sum shall be paid in equal monthly payments of $50 commencing April 1, 1994.
Teller, J.